588 A.2d 22

**Chester PAPPAS**

v.

**PRUDENTIAL PROPERTY AND CASUALTY
INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1990.

Filed Feb. 25, 1991.

46

Edward A. Monsky, Scranton, for appellant.

Joseph J. Terrana, Wilkes–Barre, for appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

MONTEMURO, Judge:

Appellant, Prudential Property and Casualty Insurance Company ("Prudential"), appeals from a grant of summary judgment in favor of the insured, appellee Chester Pappas, in this action to recover work loss benefits under the Pennsylvania No–Fault Motor Vehicle Insurance Act.[1] The

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq., repealed by Act of February 12, 1984, P.L. 26, No. 11, § 8(a), effective October 1, 1984.

issue on appeal concerns the proper method of calculating work loss benefits pursuant to § 206 of the No–Fault Act in cases where the no-fault insurer is entitled to a deduction for income tax savings realized by the insured through the receipt of nontaxable benefits.

The underlying facts in this case are undisputed. On January 18, 1982, Chester Pappas was seriously injured while operating a motor vehicle during the course of his employment. The injuries left Pappas permanently disabled and unable to return to his job. Since the date of his accident, Pappas has been receiving worker's compensation benefits; he has also received Social Security Disability benefits. Through his counsel, on September 8, 1982, Pappas notified Prudential, his no-fault insurer, that he had sustained work loss and benefits were therefore owing under the No–Fault Act. Pappas thereafter supplied Prudential with information necessary to process his claim for work loss benefits. Although in January, 1983, Prudential made partial payments to Pappas amounting to $1675.26, Prudential thereafter refused to honor any further requests for payments made on behalf of Pappas. Pappas brought this action for no-fault work loss benefits from Prudential to recover the balance of his lost wages not covered by the worker's compensation and social security benefits. Pappas also included claims for interest on the overdue benefits at a rate of 18% per annum, as allowed under 40 P.S. § 1009.-106(a)(2), and reasonable attorney's fees pursuant to 40 P.S. § 1009.107.

In cases where the insured is unable to return to work due to injuries from the accident, the No–Fault Act requires no-fault insurers to pay the insured work loss benefits, defined as "loss of gross income of a victim," subject to a statutory maximum of $15,000. 40 P.S. §§ 1009.103, 1009.-202(b). In computing the amount of an insured's net loss, the insurer is entitled to subtract from the insured's work loss any benefits received from other sources to compensate for the injury. 40 P.S. § 1009.206(a). The insurer is also entitled to deduct from the no-fault wage loss benefits any

income tax savings which the insured realizes through receipt of nontaxable loss-of-income benefits. 40 P.S. § 1009.206. The parties here disagree as to how the tax deduction should be computed.

The relevant provisions of the No–Fault Act state:

### § 1009.206.  Net Loss

(a) **General.**—Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called 'life-time reserve' of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

(b) **Tax deduction.**—If a benefit or advantage received to compensate for loss of income because of injury, whether from no-fault benefits or from any source of benefits or advantages subtracted under subsection (a) of this section, is not taxable income, the income tax saving that is attributable to such loss of income because of injury is subtracted in calculating net loss for work loss. Subtraction may not exceed twenty per cent (20%) of the loss of income and shall be in such lesser amount as the insurer reasonably determines is appropriate based on a lower value of the income tax advantage.

40 P.S. § 1009.206.

Relying on *Motley v. State Farm Mutual Insurance Co.*, 502 Pa. 335, 466 A.2d 609 (1983), the trial court held that the income tax deduction must be based solely on the work loss benefits payable by Prudential under the no-fault poli-

cy. We disagree. A careful reading of *Motley* shows that the *Motley* court did not address the issue before this Court. In a footnote, the Court simply noted that "[u]nder Section 206(b) of the No–Fault Act, the wage loss payment to the insured shall be adjusted so as to take into consideration the tax advantages which accrue to the claimant." 502 Pa. at 340 n. 7, 466 A.2d at 611 n. 7. *Motley* provides no further guidance as to how the tax advantage is to be calculated.

The statute is clear on its face. Under § 206(a), the amount of worker's compensation benefits and social security benefits which Pappas receives are to be subtracted from his gross work loss in figuring his net work loss. Additionally, under § 206(b), Prudential is entitled to a deduction for Pappas' income tax savings resulting from the receipt of any loss-of-income benefits which are nontaxable under the federal and state tax codes. If Pappas had not been injured, he would have had to pay income tax on the income he received from his employer. Because some of the wage loss compensation benefits which he is receiving are not taxable under the taxation statutes, Prudential need not compensate Pappas for income tax which he would have had to pay had he been working. "The purpose of § 206(b) is to prevent a no-fault claimant from receiving a windfall by virtue of income tax savings." *Brown v. City of Pittsburgh*, 126 Pitt.Legal J. 312, 317 (1978).

As we read the statute, the amount of the tax savings deduction depends on those loss-of-income benefits, including, *inter alia*, the work loss benefits paid by the no-fault insurer, worker's compensation benefits, and social security benefits, that constitute nontaxable income under the tax laws. We disagree with Pappas' position that the deduction must be based only on the work loss benefits payable by Prudential under the no-fault policy.

The Pennsylvania Code, 31 Pa.Code §§ 66.54, 66.55, provides guidance as to the proper method of calculating the net work loss which Prudential is required to pay. Sections 106(a)(1) and (2) of the No–Fault Act require that the no-

fault benefits be paid monthly as loss accrues; the no-fault insurer must pay interest at a rate of 18% per annum on those benefits which are not paid within 30 days of submission of proof of the loss. 40 P.S. § 1009.106. Accordingly, we will compute the amount of benefits owing to Pappas on a monthly basis.

Pappas' net loss, that is, the work loss payable by Prudential, is computed by subtracting the value of Pappas' worker's compensation, social security disability benefits and income tax savings from his total lost income. *See* 31 Pa.Code §§ 66.54(b)(2)(ii), (iii).

## I. TOTAL LOST INCOME

First we calculate the amount of Pappas' gross income actually lost. As of the date of the accident on January 18, 1982, Pappas earned a weekly wage of $252.29. Pappas' weekly wage multiplied by 52 (weeks per year), and then divided by 12 (months per year) amounts to a monthly gross lost wage of $1,093.25.

## II. WORKER'S COMPENSATION BENEFITS

■ Pappas' worker's compensation benefits for the period in question are as follows:

| PERIOD | WORKMAN'S COMPENSATION |
|---|---|
| 1/19/82 to 4/18/88 | $168.19 per week |
| 4/04/88 to 1/20/89 | $ 50.00 per week |
| 1/20/89 to 4/14/90 | $ 50.00 per week [2] |

2. As of January 20, 1989, Pappas' worker's compensation payments were commuted to a lump sum of $25,000.00 pursuant to the Workmen's Compensation Act, 77 P.S. § 604. Pappas received this commutation in lieu of future worker's compensation payments. The figure represents the total of sum of $50.00 per week for 500 weeks worth of future workman's compensation which Pappas was entitled to receive under 77 P.S. § 512 for his disability. We disagree with Prudential that the full $25,000 sum should be used in calculating Pappas' net loss, as this sum represents compensation for future wage loss. We do not believe that our Legislature intended that a no-fault insurer

R.R. at 99a–100a. Using these numbers, Pappas' monthly worker's compensation amounts to $728.82 per month from the period of January 19, 1982 to April 18, 1988, and $216.66 per month from April, 1988 until April 14, 1990.

## III. SOCIAL SECURITY BENEFITS

Pappas' social security benefits were paid as follows:

| PERIOD | SOCIAL SECURITY PAYMENTS |
|---|---|
| 7/31/83 (lump sum) | $1236.00 ($103.00/mo. for 7/82–7/83) |
| 8/1/83 to 12/31/83 | $ 103.00 per month |
| 1984 | $ 137.00 per month |
| 1985 | $ 174.00 per month |
| 1986 | $ 189.50 per month |
| 1987 | $ 195.90 per month |
| 1988 | $ 218.50 per month |
| 1989 | $ 299.90 per month |
| 1990 | $ 603.00 per month |

## IV. TAX DEDUCTION

Section 66.55(3) of the Pennsylvania Code provides that the allowance for the total of the federal, state and local taxes may not exceed the following:

| Monthly income | Percentage |
|---|---|
| Under $500 | 10 |
| $500 to $999 | 15 |
| $1,000 or over | 20 |

31 Pa.Code § 66.55(3). *See also Brown v. City of Pittsburgh, supra.* If the insured shows that he or she actually pays a lower tax rate on his or her income, then the insurer is to deduct the actual lower rate rather than the maximum

should be able to defeat its obligation to pay work loss benefits simply by delaying payment until *seven* years after the accident and loss occur and then relying on the commutation award representing future worker's compensation benefits in computing the amount owed. To hold otherwise would encourage insurers to withhold payment of work loss benefits in the hope that the insured would receive a large commutation award. The Act envisions timely payment of the work loss benefits. Thus, for purposes of our calculations, we will apportion the lump sum award in amounts of $50.00 per week, as this is what the $25,000.00 represents.

levels set forth above. On the other hand, if the no-fault insurer demonstrates that the insured pays a higher percentage for any of these income levels, then the higher percentage may be used, up to a maximum of 20%. 31 Pa.Code § 66.55(5).

In this case, Pappas has not demonstrated that a lower tax rate should apply, nor has Prudential shown that a tax rate higher than the rates set forth above applies. We therefore will apply the rate graduations as they are set forth in 31 Pa.Code § 66.55(3).

As noted above, the tax deduction must be calculated on the basis of those loss-of-income benefits which are nontaxable under the tax laws. A review of the relevant federal and state statutes shows that Pappas' worker's compensation benefits and the no-fault wage loss benefits are not taxable as gross income. The Internal Revenue Code excludes from taxable gross income:

(1) amounts received under workmen's compensation acts as compensation for personal injury or sickness;

\* \* \* \* \* \*

(3) amounts received through accident or health insurance for personal injuries or sickness;

\* \* \* \* \* \*

26 U.S.C. § 104(a). The Pennsylvania Individual Net Income Tax Act also excludes these benefits from the net income subject to state income tax:

B. The term "gross income" does not include the following items:

\* \* \* \* \* \*

(5) Any amount received through accident or health insurance, or under workmen's compensation acts as compensation for personal injuries or sickness, . . .

72 P.S. § 3402–303. Because Pappas' worker's compensation and no-fault work loss benefits are excludable from taxable income, Prudential is entitled to deduct an amount of tax savings attributable to Pappas' receipt of the nontaxable workman's compensation and no-fault benefits.

The taxability of the social security benefits poses a more complicated question. Section 86 of the Internal Revenue Code sets forth a formula for determining when social security benefits are includable in taxable gross income. We are unable to determine whether Pappas' social security disability benefits are taxable under § 86, because the record is devoid of certain relevant information. Section 86 of the Internal Revenue Code provides:

**Sec. 86. Social security and tier 1 railroad retirement benefits.**

**(a) In general.**

Gross income for the taxable year of any taxpayer described in subsection (b) includes ... social security benefits in an amount equal to the lesser of–

(1) one-half of the social security benefits received during the taxable year, or

(2) one-half of the excess described in subsection (b)(1).

**(b) Taxpayers to whom subsection (a) applies.**

(1) **In general.** A taxpayer is described in this subsection if—

(A) the sum of—

(i) the modified adjusted gross income of the taxpayer for the taxable year, plus

(ii) one-half of the social security benefits received during the taxable year, exceeds

(B) the base amount.

(2) **Modified adjusted gross income.** For purposes of this subsection, the term "modified adjusted gross income" means adjusted gross income

(A) determined without regard to this section and sections 135, 911, 931, and 933, and

(B) increased by the amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax.

**(c) Base amount.** For purposes of this section, the term "base amount" means—

(1) except as otherwise provided in this subsection, $25,000,

(2) $32,000, in the case of a joint return, and

(3) zero, in the case of a taxpayer who—

(A) is married at the close of the taxable year (within the meaning of section 7703) but does not file a joint return for such a year, and

(B) does not live apart from his spouse at all times during the taxable year.

**(d) Social Security benefit.**

(1) In General. For purposes of this section, the term "social security benefit" means any amount received by the taxpayer by reason of entitlement to—

(A) a monthly benefit under title II of the Social Security Act, or . . .

26 U.S.C. § 86.

Thus, the taxability of the social security benefits depends upon whether the social security payments are monthly benefits under title II of the Social Security Act, 26 U.S.C. § 86(d)(1), and whether Pappas fits the definition of a "taxpayer[ ] to whom subsection (a) applies." 26 U.S.C. § 86(b). The social security disability benefits which Pappas received fall within § 86 insofar as the disability insurance benefit payments are monthly benefits under title II of the Social Security Act. *See* Title II of Social Security Act, 42 U.S.C. § 423. The question which we are unable to answer is whether Pappas is a "taxpayer to whom subsection (a) applies" according to the formula set forth in § 86(b), because we do not know what Pappas' "modified adjusted gross income" within the meaning of § 86(b)(2) is for any of the years in question, nor can we determine the "base amount" applicable to Pappas under § 86(c).

▮ Having examined the particular numbers involved in this case, however, we find that a determination of the taxability of the social security benefits is unnecessary, given the extensiveness of Pappas' work loss. Even if we assume the worst case scenario from Pappas' standpoint,

that is, that the social security benefits are nontaxable under the Internal Revenue Code and therefore Prudential is entitled to a tax advantage deduction for the social security benefits, we find that Prudential is responsible for the full $15,000 statutory maximum for work loss benefits.

Thus, we will assume for purposes of our calculations that the social security benefits are nontaxable under the Internal Revenue Code and therefore Prudential is entitled to a tax advantage for the entire amount of loss-of-income benefits which Pappas receives, including the social security benefits, worker's compensation and no-fault work loss benefits. The tax deduction therefore must be based on Pappas' entire gross lost income, $1,093.25, which Pappas receives in loss-of-income benefits.

According to the rates broken down in 31 Pa.Code § 66.-55(3), the amount of the deduction for the tax savings is: 10% of $499.99 ($49.99), plus 15% of the next $500.00 ($75.00), plus 20% of the remaining $94.25 ($18.85). Thus, Prudential may deduct a maximum of $143.84 per month for tax savings realized by Pappas.

In view of the foregoing, the year-end totals owing to Pappas are:
1982

| PERIOD OF 1/18/82 THROUGH 7/18/82: | |
| --- | --- |
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −0 [3] |
| tax deduction | −143.84/mo. |
| | |
| no-fault wage loss claim | $ 220.59/mo. |
| months disabled | × 6 |
| WAGE LOSS CLAIM DUE | $1323.54 |
| | |
| PERIOD OF 7/18/82 THROUGH 12/18/82: | |
| gross lost income | $1093.25/mo |
| worker's compensation | −728.82/mo. |
| social security | −103.00/mo. [4] |
| tax deduction | −143.84/mo. |

3. Pappas did not receive any social security benefits until July, 1983.

| | |
|---|---|
| no-fault wage loss claim | $ 117.59/mo. |
| months disabled | × 5 |
| WAGE LOSS CLAIM DUE | $ 587.95 |
| 1982 TOTAL .......................... | $1911.49 |

**1983**

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −103.00/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 117.59/mo. |
| months disabled | × 12 |
| WAGE LOSS CLAIM DUE | $1411.08 |
| 1983 TOTAL .......................... | $1411.08 |

**1984**

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −137.00/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 83.59/mo. |
| months disabled | × 12 |
| WAGE LOSS CLAIM DUE | $1003.08 |
| 1984 TOTAL .......................... | $1003.08 |

**1985**

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −174.00/mo. |
| tax deduction | −143.84/mo. |

4. In July, 1983, Pappas received a lump sum social security benefit payment in the amount of $1236.00, representing $103.00 per month from 7/82 to 7/83. For purposes of our calculations, we will apportion the lump sum payment according to the monthly benefit it represents.

| | |
|---|---|
| no-fault wage loss claim | $ 46.69/mo. |
| months disabled | × 12 |

| | |
|---|---|
| WAGE LOSS CLAIM DUE | $ 559.08 |

1985 TOTAL ...........................$ 559.08

**1986**

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −189.50/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 31.09/mo. |
| months disabled | × 12 |

| | |
|---|---|
| WAGE LOSS CLAIM DUE | $ 373.08 |
| 1986 TOTAL ...........................$ 373.08 | |

**1987**

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −195.90/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 24.69/mo |
| months disabled | × 12 |

| | |
|---|---|
| WAGE LOSS CLAIM DUE | $ 296.28 |
| 1987 TOTAL ...........................$ 296.28 | |

**1988**

PERIOD OF 1/82 to 4/18/88:

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −728.82/mo. |
| social security | −218.50/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 2.09/mo. |
| months disabled | × 4 |

| | |
|---|---|
| WAGE LOSS CLAIM DUE | $ 8.36 |

PERIOD OF 4/18/88 through 12/88:

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −216.66/mo.[5] |
| social security | −218.50/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 514.25/mo. |
| months disabled | × 8 |

WAGE LOSS CLAIM DUE    $4114.00

1988 TOTAL ........................... $4122.36

1989

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −216.66/mo. |
| social security | −299.90/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 432.85/mo. |
| months disabled | × 12 |

WAGE LOSS CLAIM DUE    $5194.20
1989 TOTAL ........................... $5194.20

1990

PERIOD OF 1/90 to 4/14/90:

| | |
|---|---|
| gross lost income | $1093.25/mo. |
| worker's compensation | −216.66/mo. |
| social security | −603.00/mo. |
| tax deduction | −143.84/mo. |

| | |
|---|---|
| no-fault wage loss claim | $ 129.75/mo. |
| months disabled | × 4 |

WAGE LOSS CLAIM DUE    $ 519.00
1990 TOTAL ........................... $ 519.00

---

The yearly totals amount to $15,389.65. Thus, as of April, 1990, when this suit was brought, Prudential owed Pappas the statutory maximum of $15,000 in work loss benefits. The record reflects that Prudential was notified

5. As of April 18, 1988, Pappas' weekly worker's compensation of $168.19 was reduced to $50.00 per week.

as early as September, 1982 of its obligation to compensate Pappas for his work loss benefits. See Complaint, exh. "B", exh. "C", R.R. at 49A–51A. Despite numerous requests by Pappas' attorney for payment of the benefits prior to the institution of this lawsuit, Prudential paid Pappas only $1,675.26. Under sections 106(a)(2) and 107 of the No–Fault Act, Pappas is entitled to recover interest at the rate of 18% per annum on the overdue payments. We are completely unimpressed by Prudential's failure to pay the work loss benefits on a timely basis, and causing Pappas to undergo this extended litigation to recover benefits which were rightfully owing to him from the start.

We remand this case to the trial court to enter an order awarding Pappas the remainder of his work loss benefits, that is, $13,324.74, plus interest.

For the foregoing reasons, we remand this case for further proceedings consistent with this decision.

Remanded. Jurisdiction relinquished.